**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAYTON SUPERIOR CORP.,**

                                        **Plaintiff,**

                    **v.**                                        **1:08-CV-1312**
                                                                  **(FJS/RFT)**

**SPA STEEL PRODUCTS, INC.,**

                                        **Defendant.**
_____

**APPEARANCES**                         **OF COUNSEL**

**THOMPSON HINE, LLP**                  **JENNIFER S. ROACH, ESQ.**
3900 Key Center                         **THOMAS J. COLLIN, ESQ.**
127 Public Square
Cleveland, Ohio 44114-1291
Attorneys for Plaintiff

**HARRIS BEACH, PLLC**                  **PAUL R. BRAUNSDORF, ESQ.**
99 Garnsey Road
Pittsford, New York 14534
Attorneys for Plaintiff

**KATZMAN LAW FIRM, PLLC**              **ROBERT L. KATZMAN, ESQ.**
376 Broadway
Suite 21
Saratoga Springs, New York 12866
Attorneys for Defendant

**DEGRAFF, FOY & KUNZ, LLP**            **NICOLE R. RODGERS, ESQ.**
47 West Harrison Street
Saratoga Springs, New York 12866
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

# I. INTRODUCTION

On July 16, 2008, Plaintiff filed this breach-of-contract action to recover money owed for goods that it had sold and delivered to Defendant prior to June 1, 2008.  *See* Complaint at ¶ 1. On December 12, 2008, Defendant filed its answer, in which it asserted two affirmative defenses and alleged counterclaims for antitrust violations, common law unfair competition, and product defects.  *See generally* Answer.

Currently pending before the Court are Plaintiff's motion for summary judgment on its breach-of-contract claim, its motion to strike Defendant's affirmative defenses, and its motion to dismiss Defendant's counterclaims.

# II. BACKGROUND[1]

Plaintiff, a corporation organized under Delaware law, is a manufacturer and distributor of construction supplies, with its principal place of business in Dayton, Ohio.

Defendant is a manufacturing and construction materials distributor located in Malta, New York.  Defendant provides fabricators in three states with steel supply and reinforcing steel fabrication and provides other materials to construction contractors.  Defendant distributes products from more than 200 vendors throughout the Northeast, including those that Plaintiff manufactures.

Defendant has been Plaintiff's customer for several years.  Defendant, like Plaintiff's other customers, submits purchase orders to Plaintiff; and, upon receiving the purchase order,

---

[1] Except where otherwise indicated, the "Background" facts are undisputed.

Plaintiff sends Defendant an order acknowledgment, ships the product to Defendant, and, thereafter, sends an invoice to Defendant for the products shipped.

From May 23, 2006, to October 25, 2007, Defendant submitted purchase orders to Plaintiff; and, upon receipt of those purchase orders, Plaintiff provided order acknowledgments to Defendant, shipped it the products requested, and invoiced Defendant for the amount owed for the order.  *See* Plaintiff's Statement of Material Facts at ¶ 7.[2]  Defendant accepted delivery of the goods that Plaintiff shipped and at no time attempted to revoke acceptance or return those goods. *See id.*  Plaintiff claims that Defendant owes it $1,181,847.45, exclusive of interest, for goods that it ordered and accepted.  *See id.* at ¶ 9.  Moreover, Plaintiff asserts that, in accordance with the terms and conditions provided on each purchase order between the parties, finance charges accrue on amounts unpaid for more than thirty (30) days at a rate of 1.5% per month.  *See id.* at ¶ 10.  Therefore, as of January 26, 2010, Plaintiff claims that Defendant owed it an additional $443,510.45 in finance charges.  *See id.* at ¶ 11.

In its answer to Plaintiff's complaint, Defendant asserts several counterclaims.  First, Defendant asserts that Plaintiff violated the Robinson-Patman Act ("RPA"), 15 U.S.C. §§ 13, 13a, by offering products to Defendant's competitors at discounted rates.  In its second counterclaim, Defendant asserts that Plaintiff intentionally and recklessly engaged in unfair

---

[2] Defendant's responsive papers do not comply with the requirements set forth in Local Rule 7.1(a).  Specifically, in response to Plaintiff's motion for summary judgment, Defendant failed to submit a memorandum of law and a response to Plaintiff's statement of material facts. Defendant merely filed a brief attorney affirmation and an affidavit of its president, along with several exhibits.  The Court advises Defendant that its failure to controvert the facts that Plaintiff set forth in its statement of material facts carries significant consequences.  *See* Local Rule 7.1(a)(3) (providing that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert").

competition through its practice of discriminatory pricing, rebates, incentives, discounts and allowances, which Plaintiff offered to Defendant's competitors, but not to Defendant.  As to its third counterclaim, Defendant alleges that Plaintiff intentionally and recklessly sold it defective products.

Finally, as noted, Defendant also asserts two affirmative defenses in its answer: failure to state a claim for which relief can be granted and unclean hands.


## III. DISCUSSION

**A.      Plaintiff's motion for summary judgment**

*1. Summary judgment standard*

A court may grant a motion for summary judgment only if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where

the non-movant either does not respond to the motion or fails to dispute the movant's statement

of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather,

the court must be satisfied that the citations to evidence in the record support the movant's

assertions.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not

verifying in the record the assertions in the motion for summary judgment "would derogate the

truth-finding functions of the judicial process by substituting convenience for facts").

### 2. Action for price pursuant to N.Y. U.C.C. § 2-709

A contract for the sale of goods under the New York Uniform Commercial Code

("UCC") is created upon the submission of a purchase order and subsequent acknowledgment

and shipment of the ordered goods.  *See* N.Y. U.C.C. Law § 2-204(1) (providing that "[a]

contract for sale of goods may be made in any manner sufficient to show agreement, including

conduct by both parties which recognizes the existence of such a contract").  Section 2-709 of

New York's Uniform Commercial Code sets forth the circumstances in which an aggrieved seller

may recover damages for the price of goods contracted for sale.  *See* N.Y. U.C.C. Law § 2-

709(1)(a).  In order to recover on an action for price pursuant to section 2-709, a plaintiff must

establish that "1) [it] had a contract; 2) the buyer failed to pay the purchase price; and 3) the

buyer accepted the goods."  *Weil v. Murray*, 161 F. Supp. 2d 250, 254-55 (S.D.N.Y. 2001)

(citing *Hyosung America, Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 79 n.1 (2d Cir. 1998)).

A seller's right to the price arises only upon the buyer's "acceptance" of the goods.  *See*

*Orbis Co., Inc. v. Rivera*, 140 A.D.2d 679, 680 (2d Dep't 1988) (citations omitted); *see also*

*Integrated Circuits Unlimited v. E.F. Johnson Co.*, 875 F.2d 1040, 1042 (2d Cir. 1989).  Even if

the goods are non-conforming, the seller is entitled to the "price" as long as the buyer accepts the goods.  *See* N.Y. U.C.C. Law § 2-607(1); *see also Cayuga Press of Ithaca, Inc. v. Lithografiks, Inc.*, 211 A.D.2d 908, 910 (3d Dep't 1995) (citations omitted); *United States ex rel. Saunders Concrete Co., Inc. v. Tri-State Design Constr. Co.*, 899 F. Supp. 916, 923 (N.D.N.Y. 1995).  A buyer, however, may avoid "acceptance" by rejecting the goods within a reasonable time after receipt.  *See* N.Y. U.C.C. Law § 2-602(1); *Saunders Concrete Co.*, 899 F. Supp. at 923.

In the present matter, Plaintiff has established all of the elements of an action for price pursuant to section 2-709.  Plaintiff has established that Defendant was its customer and that Plaintiff approved Defendant to purchase products on credit.  *See* Affidavit of Paul Fisher sworn to January 27, 2010 ("Fisher Aff."), at ¶ 4.  Moreover, Plaintiff has provided uncontroverted allegations that it sold products to Defendant under two separate accounts and that, between May 2006 and October 2007, Defendant submitted purchase orders to Plaintiff for products.  *See id.* Defendant does not contest that Plaintiff shipped these products and that Defendant accepted them; nor does Defendant contest that it has not yet paid Plaintiff for these products.  *See id.* at ¶¶ 4-5 and Exhibit "1" annexed thereto.[3]  Finally, Plaintiff has provided invoices for the goods

---

[3] In its answer, Defendant "[d]enies each and every allegation contained in paragraph II [of the Complaint]."  *See* Dkt. No. 33.  Paragraph II of the Complaint is the claim for relief in which Plaintiff asserts that "Defendant owes plaintiff the sum of $1,291,580.63 for goods sold and delivered to the defendant at its request prior to June 1, 2008."  *See* Dkt. No. 1.  This is the only instance where Defendant specifically denies its liability.  When read in conjunction with its other filings, however, this statement is merely an assertion that the amount Defendant owes should be offset by any amount awarded pursuant to its counterclaims and affirmative defenses. *See* Dkt. No. 54, at ¶ 5 (stating that "[t]he fact is that if the court grants the plaintiff's motion for summary judgment the financial burden will effectively destroy the defendant and it will have no opportunity to litigate its counterclaims.  If the plaintiff's motion is denied the defendant will, at least, have the opportunity to prove its case and offset any obligations that it might have to the plaintiff").

that Defendant ordered and that it delivered to Defendant, along with the statements of account that Plaintiff sent to Defendant on a monthly basis showing the amounts due and owing, as well as the finance charges that were accruing on past due balances.  *See id.* at ¶¶ 7-8.

Defendant does not contest that a contract existed for the sale of goods, nor could it.  *See M. Slavin & Sons Ltd. v. Glatt Gourmet Cuisine, Inc.*, 23 Misc. 3d 18, 19 (N.Y. App. Term 2009) (holding that a dated invoice reflecting, among other things, the identities of the buyer and seller, a description of the goods, the amount of the goods, the price of the goods, and the payment terms constitutes a valid and enforceable contract under the U.C.C., and that the invoice constituted a writing in confirmation of a contract for the sale of goods in satisfaction of the Statute of Frauds); *see also Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, No. 06-CV-3893, 2010 WL 446042, *9 (E.D.N.Y. Feb. 1, 2010).  Moreover, Defendant does not claim that it did not accept the goods sent in response to the purchase orders, and Defendant's conduct would make such an assertion untenable.  *See Shokai Far East Ltd. v. Energy Conservation Sys., Inc.*, 628 F. Supp. 1462, 1466 (S.D.N.Y. 1986) (holding that the defendant accepted the goods after use); *Cliffstar Corp. v. Cape Cod Biolab Corp.*, 37 A.D.3d 1073, 1074-75 (4th Dep't 2007) (holding that the defendant's attempted rejection of the goods one year after delivery and five months after commencement of the action was insufficient as a matter of law (citations omitted)); *S & H Bldg. Material Corp. v. Riven*, 176 A.D.2d 715, 717 (2d Dep't 1991) (holding that claiming that materials delivered were defective for the first time in the answer, eight and a half months after the last delivery of materials, was not a timely revocation (citations omitted)).

In *Carl Zeiss, Inc. v. Micro Med Instruments, Inc.*, 186 A.D.2d 778 (2d Dep't 1992), the court granted summary judgment on facts nearly identical to those present here.  The plaintiff

commenced the action to recover $426,334.25 for goods sold and delivered to the defendant. *See id.* at 779.  The defendant raised several counterclaims and affirmative defenses alleging, among other things, a claim for unpaid commissions and a claim for damages relating to inventory that the plaintiff was allegedly obligated to repurchase, which would have offset the amount that the defendant owed.  The defendant did not, however, "dispute the price of the goods, that they were ordered by the defendant from the plaintiff, that they were delivered to the defendant without objection, and that the defendant never remitted payment."  *Id.*  Granting the plaintiff's motion for summary judgment, the court held that "[t]he mere assertion of counterclaims does not prevent the granting of summary judgment on the complaint when, as here, the counterclaims are sufficiently separable from the plaintiff's causes of action[.]"  *Id.* at 779-80 (citations omitted).

As in *Carl Zeiss, Inc.*, Defendant has not disputed the price of the goods, that it ordered these goods from Plaintiff, that Plaintiff delivered the goods it ordered, that it did not object to the goods Plaintiff delivered, or that it failed to remit payment for the accepted goods.  *See id.*; *see also Sunbeam Corp. v. Morris Distrib. Co., Inc.*, 55 A.D.2d 722, 723 (3d Dep't 1976) (granting summary judgment even though the defendant's counterclaims bore some relation to the plaintiff's action for goods sold and delivered); *Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 794 (3d Dep't 2002) (citations omitted).

Accordingly, the Court grants Plaintiff's motion for summary judgment on its complaint. For the reasons stated below, however, the Court will not enter a final judgment with regard to Plaintiff's claim at this time.

### 3. *Entry of a final judgment with regard to Plaintiff's claim pursuant to Rule 54(b) of the Federal Rules of Civil Procedure*

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim –  . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).  The Supreme Court has outlined a two-prong analysis for determining whether a court should certify a judgment under Rule 54(b): first, the court must determine whether the judgment is final and, second, whether there is any just reason to delay entry of judgment.  *See Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 7-8 (1980).  Although a decision to certify a judgment under Rule 54(b) is committed to the sound discretion of the district court, "Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 166 (11th Cir. 1997) (quoting *Morrison-Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir. 1981) (Kennedy, J.)).

As to the first prong of the analysis, the judgment at issue "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.,* 446 U.S. at 7 (quoting [*Sears, Roebuck & Co. v. Mackey,*] 351 [U.S. 427,] 436, 76 S. Ct., at 900).

As to the second prong, the court must balance the judicial administrative interests and relevant equitable concerns.  *See Curtiss-Wright Corp.,* 446 U.S. at 8.  "Consideration of the

former factor is necessary to ensure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Ebrahimi,* 114 F.3d at 166 (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438, 76 S. Ct. 895, 901, 100 L. Ed. 1297 (1956)).  "The latter factor serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay." *Id.* (citations omitted).

Judicial administrative interests include "whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp.,* 446 U.S. at 8 (footnote omitted).  The relevant equitable considerations include the possibility of setoff, the financial solvency of the parties, the ability of a party to collect a judgment, the length of the delay if judgment is not entered immediately, and the size of the appeal bond required if judgment is entered immediately.  *See id.* at 12; *see also Gunter v. Hutcheson*, 497 F. Supp. 362, 364 (N.D. Ga. 1980).

Defendant asserts that it would suffer substantial prejudice if the Court severed its counterclaims from Plaintiff's claim and entered a final judgment for Plaintiff on its claim at this time.  Defendant further argues that the relative size of the parties and the possibility of setoff strongly favor not severing these claims and delaying entry of a final judgment.  The Court agrees and, therefore, it will not enter a final judgment with regard to Plaintiff's claim pursuant to Rule 54(b).


**B.**      **Plaintiff's motion to strike Defendant's affirmative defenses**

Since the Court has granted Plaintiff's motion for summary judgment, Plaintiff's motion to strike Defendant's affirmative defense for failure to state a claim is moot.  Moreover, it is well settled that "[u]nclean hands is an equitable defense to equitable claims."  *Aetna Cas. & Sur. Co v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005) (citations omitted).  Therefore, because Plaintiff seeks damages in an action at law, Defendant cannot avail itself of the affirmative defense of unclean hands.  *See id.*  Accordingly, the Court grants Plaintiff's motion to strike Defendant's affirmative defenses.

**C.      Plaintiff's motion to dismiss Defendant's counterclaims**

*1. Motion to dismiss standard*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of

the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 129 S. Ct. at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct.

1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 557, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[] complaint must be dismissed[.]" *Twombly*,

550 U.S. at 557, 570.

On the other hand, when a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the

movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction."

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For

purposes of such a motion, "the allegations in the complaint are not controlling . . . and only

uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted).

Both the movant and the pleader are permitted to use affidavits and other pleading materials to

support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova

v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction

must be shown affirmatively, and that showing is not made by drawing from the pleadings

-12-

inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56."  *Lopresti v. Merson*, No. 00 Civ. 4255, 2001 WL 1132051, *5 (S.D.N.Y. Sept. 21, 2001) (citing *Kamen* [*v. Am. Tel. & Tel. Co.*,] 791 F.2d [1006,] 1011 [(2d Cir. 1986)]).

### 2. Defendant's price-discrimination counterclaim pursuant to the RPA

Section 2(a) of the RPA provides that

> [i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

15 U.S.C. § 13(a).  In sum, the RPA prohibits discriminatory pricing among competing buyers of the same goods.  *See id.*  The RPA, however, does not "ban all price differences charged to 'different purchasers of commodities of like grade and quality[,]'" *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220 (1993); rather, the RPA proscribes "price discrimination only to the extent that it threatens to injure competition[,]" *id.*

To state a claim for secondary-line price discrimination[4] under section 2(a), a plaintiff

---

[4] Price discrimination claims are classified as "primary line," "secondary line," and "tertiary line."  "Primary-line cases entail conduct – most conspicuously, predatory pricing – that
(continued...)

must allege that (1) the seller made the relevant sales in interstate commerce; (2) the seller discriminated in price between two different buyers; (3) the product sold to both buyers was of like grade and quality; and (4) the price discrimination had an unlawful effect on competition. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176-77 (2006) (quotation omitted).

### a. Subject matter jurisdiction

Plaintiff asserts that the Court must dismiss Defendant's secondary-line price-discrimination counterclaim for lack of subject matter jurisdiction because Defendant fails to allege that at least one of the sales of the discriminatorily priced goods crossed a state line, either in connection with its purchase by Defendant or in connection with its purchase by a favored customer. *See* Dkt. No. 37 at 3.

Whether a court has subject matter jurisdiction over a claim for secondary-line price discrimination is largely determined by the Supreme Court's decision in *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186 (1974). *Gulf Oil*, which involved a secondary-line violation, held that section 2(a) of the RPA did not extend jurisdiction to the full extent of Congress' constitutional power granted under the Commerce Clause. *See id.* at 199-200. Specifically, the

---

[4](...continued)
injures competition at the level of the discriminating seller and its direct competitors." *Volvo Trucks N. Am., Inc.*, 546 U.S. at 176 (citations omitted). A secondary-line price discrimination claim, which Defendant asserts here, is a claim where the allegedly injured party is in competition with a favored customer of the same seller. *See George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 n.2 (2d Cir. 1998) (citation omitted). "Tertiary-line cases involve injury to competition at the level of the purchaser's customers." *Volvo Trucks N. Am., Inc.*, 546 U.S. at 176 (citation omitted).

Court stated that "the distinct 'in commerce' language . . . appears to denote only persons or activities within the flow of interstate commerce. . . . [T]he jurisdictional requirements of these provisions cannot be satisfied merely by showing that allegedly anticompetitive acquisitions and activities affect commerce." *Id.* at 195.

To satisfy the "in commerce" requirement, one of the discriminatory sales must cross a state line. *See id.*; *see also Costal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum, Corp.*, 79 F.3d 182, 189 (1st Cir. 1996) (citations omitted). As this requirement is jurisdictional, *see Gulf Oil*, 419 U.S. at 195, the burden to prove the interstate character of the sales is on the party asserting subject matter jurisdiction, *see Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000) (citation omitted).

Contrary to Plaintiff's assertions, Defendant has pled facts sufficient to establish the Court's subject matter jurisdiction over this counterclaim. In its Answer/Counterclaim Complaint, Defendant asserts that, "[p]rior to the commencement of this action, [D]efendant had purchased the offending products for sale to its customers, to calculate its bid for various New York State D.O.T. projects, and for use in other various projects related to its business." *See* Answer at ¶ 23. In addition, Defendant states that it is a New York corporation, with its principal place of business in Malta, New York, and that Plaintiff is a Delaware corporation, with its principal place of business in Dayton, Ohio. *See id.* at ¶¶ 10-11. Taking these two assertions together, it logically follows that Plaintiff's sale to Defendant – one of the alleged discriminatory sales – was in interstate commerce.

Based on the foregoing, Defendant has established that the Court has subject matter jurisdiction over this counterclaim.

### b. Actual sale of offending product to competitor is required

Plaintiff alleges that the Court should dismiss Defendant's RPA counterclaim because there is no allegation that Plaintiff actually sold the offending product to one of Defendant's competitors; it only alleges that Plaintiff offered the offending products for sale to favored competitors.  *See* Dkt. No. 37, at 5.

Courts across the country have varied widely in their interpretation of the RPA and the Two-Purchaser Rule.  Neither the Supreme Court nor the Second Circuit has decided whether discriminatory quotes to resellers competing for the same bid establish a claim under the RPA.  *See Volvo Trucks N. Am., Inc.*, 546 U.S. at 180 (noting that "Volvo and the United States argue [that] the Act does not reach markets characterized by competitive bidding and special-order sales, as opposed to sales from inventory. . . . We need not decide that question today").

On one end of this split, two Circuit Courts have found that there is no two-purchaser requirement.  The Sixth Circuit has held that an unsuccessful bidder can state a claim for price discrimination under the RPA.  *See Allied Accessories & Auto Parts Co., Inc. v. Gen. Motors Corp.*, 825 F.2d 971, 973 (6th Cir. 1987) (allowing the claim to proceed but not discussing "bidder" or "purchaser" status).  Similarly, the Fifth Circuit has held that no actual purchases must be made to state a claim under the RPA.  *See Am. Can Co. v. Bruce's Juices*, 187 F.2d 919, 922-23 (5th Cir. 1951); *see also Indus. Burner Sys., Inc. v. Maxon Corp.*, 275 F. Supp. 2d 878, 886-87 (E.D. Mich. 2003) (holding that unsuccessful bidder can state an RPA claim because "the relevant competition is in the market for the bid").

Other courts have found that the Two-Purchaser Rule applies but that there are exceptions to it.  One interpretation is that previous purchases can be used to establish

-16-

"purchaser" status for a claim under the RPA.  *See Delong Equip. Co. v. Wash. Mills Electro Minerals Corp.*, 990 F.2d 1186, 1202 (11th Cir. 1993) (holding that, although "there must be two sales made by the same seller to at least two different purchasers at two different prices, . . . there is no requirement that the two sales be made at precisely the same time or place" (internal citation omitted)); *Hartley & Parker, Inc. v. Fla. Beverage Corp.*, 307 F.2d 916, 921 (5th Cir. 1962) (holding that "substantial stock" purchased before the price discrimination began can establish purchaser status for a claim under the RPA).[5]

At the other end, several courts, including some in this Circuit, have dismissed claims under the RPA for failure to demonstrate two purchases at two different prices by two different purchasers.  *See Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 142 (3d Cir. 1998) (holding that "[m]erely offering lower prices to a customer does not state a price discrimination claim" (footnote omitted)); *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 (8th Cir. 1982) (holding that "at least two sales must be alleged to different purchasers at different prices[;] . . . [m]ere offers to sell are not sufficient" (citations omitted)); *Shaw's, Inc. v. Wilson-Jones Co.*, 105 F.2d 331, 333 (3d Cir. 1939) (holding that "[t]he discrimination in price . . . must be . . . 'between different purchasers' . . . .  It does not mean a prospective purchaser, or one who wishes to purchase . . . ."); *Highspire, Inc. v. UKF Am., Inc.*, 469 F. Supp. 1009, 1012 (S.D.N.Y. 1979) (holding that "[a] sale at one price and a mere offer to sell at another price is not sufficient" (citation omitted)).

Resolution of this split in authority, however, is unnecessary.  Although Defendant

---

[5] Although the Fifth Circuit's acknowledgment of the Two-Purchaser Rule in *Hartley* seems to contradict its holding in *Bruce's Juices*, the court in *Hartley* did not address the bidder-purchaser distinction; and, therefore, *Hartley* and *Bruce's Juices* are distinguishable.

repeatedly asserted that the offending products, which it had already purchased, were "offered" to its competitors at a lower price, it also asserted that such products were sold. *See* Answer at ¶ 26 (alleging that, "[u]pon information and belief, the plaintiff's policy of discriminatory pricing, rebates, incentives, discounts and allowances with respect to the Offending Products A, B, C and D were not justified based upon the cost of manufacture, *sale* or delivery resulting from the differing methods or quantities in which such commodities were *sold* or delivered to the competitors of defendant" (emphasis added)).  Although the answer provides less than perfect guidance, it sufficiently states that Plaintiff sold the offending products to Defendant and its competitors.  As such, even if the Court were to adopt the most restrictive view of the RPA, as discussed above, Defendant has alleged facts sufficient to survive this motion to dismiss.

Accordingly, the Court denies Plaintiff's motion to dismiss on this ground.

### c. Contemporaneous discriminatory sales and injury to competition

It is not enough that two sales have occurred under the RPA.  The sales to the favored customer and disfavored customer must be contemporaneous.  *See Monsieur Touton Selection, Ltd. v. Future Brands, LLC*, No. 06 Civ. 1124, 2006 WL 2192790, *5 (S.D.N.Y. Aug. 1, 2006); *see also Atalanta Trading Corp. v. F.T.C.*, 258 F.2d 365, 372 n.6 (2d Cir. 1958).  A plaintiff can show contemporaneous transactions by alleging that it was "engaged in actual competition with the favored purchaser(s) as of the time of the price differential." *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 (2d Cir. 1987) (citations omitted).  Moreover, proof of competitive injury in a secondary-line case requires showing "the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Volvo Trucks N. Am., Inc.*, 546 U.S. at 177

(citations omitted).  The party seeking relief under the RPA must allege that there was a differentially priced transaction in which it was both a "purchaser" under the Act and "in actual competition" with the favored purchaser for the same customer.  *See id.*

In the present matter, Defendant does not allege that Plaintiff's sale of the offending products to Defendants unnamed competitors occurred at or around the time when Plaintiff sold Defendant the offending products.  Moreover, although Defendant states that Plaintiff sold the offending products to Defendant's competitors in the Northeast, Defendant does not claim that it was in competition with these purchasers at the time it purchased the products at issue.  Finally, although Defendant contends that it lost the "NYS D.O.T." job, it provides no facts regarding who received the job, whether that person was a competitor, and whether that individual purchased these products from Plaintiff at a lower cost.  *See United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed. Appx. 14, 17 (2d Cir. 2008); *see also Monsieur Touton Selection*, 2006 WL 2192790, at *6 (holding that "[i]t would be improper to allow this case to proceed when defendants are largely clueless with respect to: which of its customers are alleged to have received favored treatment compared to Touton; which product or products are the subject of the alleged price discrimination; the general time period that the discrimination against Touton is alleged to have taken place; or the time and place of even a single allegedly discriminatory transaction" (footnote omitted)).

Defendant attempts to overcome these deficiencies through allegations contained in documents not attached to or referenced in its Answer/Counterclaim Complaint, *i.e.*, the affidavits and unsworn statements submitted in response to Plaintiff's motion to dismiss.  *See* Dkt. No. 44 at 2-3 (citations omitted).

Although it appears that Defendant possesses facts sufficient to survive a motion to dismiss, Defendant did not include this information in its pleading.  However, Defendant did request that the Court grant it leave to replead if the Court found its pleading to be deficient.  *See* Dkt. No. 44 at 19.  In the interests of justice, the Court grants Defendant's request for leave to move to amend its first counterclaim.

### 3. Defendant's unfair-competition counterclaim

Plaintiff asserts that the Court should dismiss Defendant's counterclaim for unfair competition because New York law does not recognize this cause of action and because Defendant failed to allege either deception or the appropriation of exclusive property.  *See* Dkt. No. 37, at 11.  Defendant claims that "Plaintiff intentionally and recklessly engaged in unfair competition through its policy of discriminatory pricing, rebates, incentives, discounts and allowances with respect to Offending Products A, B, C and D."  *See* Answer at ¶ 33.

The case law is clear that "neither price discrimination nor vertical price fixing is prohibited by New York law."  *BP Oil Corp. v. Park Stations, Inc.*, No. 72 Civ. 5017, 1976 WL 1249, *2 (S.D.N.Y. Apr. 14, 1976) (citing *New York v. Mobil Oil Corp.*, [38 N.Y.2d 460, 464-65 (1976)]).  In fact, the New York Court of Appeals noted that New York has declined to adopt a state-law counterpart to the RPA.  *See id.*  Moreover, a claim for unfair competition must fail where there is no allegation of either deception or the appropriation of exclusive property.  *See H.L. Hayden Co.  of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 672 F. Supp. 724, 752 (S.D.N.Y. 1987), *aff'd*, 879 F.2d 1005 (2d Cir. 1989); *Schwimmer v. Sony Corp. of Am.*, 471 F. Supp. 793, 797 (E.D.N.Y. 1979).

*Mobil Oil* made clear that New York law does not support a claim for "nonreciprocal, unilateral" price discrimination, as alleged in the present matter.  Defendant attempts to overcome this fact by asserting that Plaintiff's practices were "deceptive by nature" and that, as Plaintiff's customer, Defendant "has the right to believe that it would receive the same treatment as other customers. . . ."  *See* Dkt. No. 44, at 14.  First, deception implies more than the mere omission of the fact that other customers are charged less for the same items; it requires some affirmative action on Plaintiff's part intended to mislead Defendant.  Defendant made no such allegation here.  Defendant's naive assumption that Plaintiff would give it the best deal possible does not assert a claim of deceptive practices.

Second, New York's antitrust law requires more than mere unilateral action.  It requires that the parties to the prohibited conduct enter into a "contract, agreement, arrangement or combination" whereby they agree to, among other things, establish a monopoly or "interfer[e] with the free exercise of any activity in the conduct of any business, trade or commerce . . . ."  N.Y. Gen. Bus. Law § 340(1); *see also Mobil Oil Corp.*, 38 N.Y.2d at 462-63.  Defendant failed to allege that Plaintiff and any of the favored competitors entered into such an agreement.

Based on the foregoing, the Court grants Plaintiff's motion to dismiss Defendant's counterclaim for unfair competition under New York law.  Furthermore, since amendment would be futile because, as discussed, New York does not recognize the cause of action Defendant is attempting to allege, the Court denies Defendant's request to amend its answer with respect to this counterclaim.

**4. Defendant's defective-products counterclaim**

In its Answer/Counterclaim Complaint, Defendant alleges that Plaintiff sold it offending products that were defective and that Defendant then resold these defective products to its customers who then complained about these defects.  *See* Answer at ¶¶ 37-38.  Defendant claims that, because of these defective products, it suffered "economic loss, including but not limited [to,] loss of market share, loss of NYS D.O.T. projects, loss of customers, loss of employees, damage to reputation and loss of sales and profits."  *See id.* at ¶ 40.

Under New York law, these conclusory allegations appear to allege one of three possible causes of action: (1) breach of an express warranty pursuant to N.Y. U.C.C. Law § 2-313; (2) breach of the implied warranty of merchantability pursuant to N.Y. U.C.C. Law § 2-314; or (3) breach of the implied warranty of fitness pursuant to N.Y. U.C.C. Law § 2-315.[6]

### a. Breach of the implied warranty of merchantability

To succeed on a breach of the implied warranty of merchantability claim, a defendant must establish "'"(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the [injury].'"'  *Plemmons v. Steelcase Inc.*, No. 04 Civ. 4023, 2007 WL 950137, *3 (S.D.N.Y. Mar. 29, 2007) (quotation and other citations omitted).  "In short, the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used."  *Id.* (citation omitted).

---

[6] In its response, Defendant only argues that it has properly stated a cause of action for breaches of the implied warranty of merchantability and the implied warranty of fitness. Accordingly, the Court will only address whether Defendant alleged facts sufficient to establish either of these causes of action.

Here, the counterclaim does not contain any allegations that the products were defectively designed or manufactured or that the defect existed when Plaintiff delivered the products.  However, attached to its response to Plaintiff's motion to dismiss, Defendant included a letter from a customer that summarizes a complaint it had regarding a product of Plaintiff's that Defendant sold.  *See* Dkt. No. 44-4.  Specifically, the letter states that Plaintiff's "Type II Class B white pigmented curing compound" was defective, that Plaintiff's representative admitted that the product was not performing as it was supposed to, and that Defendant removed the defective product at its own expense.  *See id.*

Again, although it appears that Defendant may be able to allege facts sufficient to survive a motion to dismiss, Defendant has failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure and the Local Rules.  Nonetheless, because to do so would not be futile, the Court grants Defendant's request for leave to move to amend this counterclaim.

### b. Breach of the implied warranty of fitness

To sustain a claim for a breach of the implied warranty of fitness for a particular purpose, the movant must establish three elements.  *See* N.Y. U.C.C. Law § 2-315.  First, the seller, at the time of contracting, must have reason to know the particular purpose for which the goods are required.  *See Symphony Fabrics Corp. v. Creations by Aria, Inc.*, 111 A.D.2d 650, 651 (1st Dep't 1985); *Emerald Painting, Inc. v. PPG Indus., Inc.*, 99 A.D.2d 891, 892 (3d Dep't 1984).  Second, the seller must have reason to know that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods for the specified purpose.  *See Emerald Painting, Inc.*, 99 A.D.2d at 892.  Third, the buyer must, in fact, rely on the seller's skill or judgment.  *See*

*id.*

In the present matter, Defendant alleges that "[P]laintiff intentionally and recklessly" sold it "Offending Products A, B, C, and D which were defective." *See* Answer at ¶ 37.  Defendant does not allege that Plaintiff knew the particular purpose for which the product was to be used; that Plaintiff knew that Defendant was relying on Plaintiff's skill to purchase suitable products for this intended purpose; or that Defendant, in fact, relied on Plaintiff's judgment.  In its response to this motion, Defendant alleges, in general terms, that it relied on Plaintiff's expertise in making these unspecified purchases, that Plaintiff knew that Defendant was relying on its expertise, and that Plaintiff knew the purpose for which the goods were required.  *See* Dkt. No. 44, at 16-17.  Defendant asserts that it will be able to prove these allegations, with specificity, through the discovery process.  *See id.* at 15-16.

Although Defendant did not plead facts sufficient to allege a cause of action for either of these alleged breaches, its response to Plaintiff's motion to dismiss indicates that it may be able to establish these causes of action.  Therefore, the Court grants Defendant's request for leave to move to amend this counterclaim.[7]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

---

[7] Although the Court is granting Defendant leave to move to amend this counterclaim, it is skeptical about Defendant's ability to establish the requisite elements.  Based on the facts provided, it is unclear whether Defendant, as a middleman, can establish that Plaintiff knew or had reason to know of the particular purpose for which the goods were required.

**ORDERS** that Plaintiff's motion for summary judgment on its breach-of-contract claim is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to strike Defendant's affirmative defenses is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to dismiss Defendant's state-law counterclaim for unfair competition is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to dismiss the remainder of Defendant's counterclaims is **DENIED** without prejudice; and the Court further

**ORDERS** that Defendant's request for leave to move to amend its first and third counterclaims is **GRANTED**; and the Court further

**ORDERS** that Defendant shall file its motion, made returnable before this Court, to amend its answer to correct the above-noted deficiencies in its first and third counterclaims in compliance with the Federal Rules of Civil Procedure and the Local Rules within **thirty (30) days** of the date of this Memorandum-Decision and Order .[8]

**IT IS SO ORDERED.**

Dated: September 23, 2010
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[8] The Court directs Defendant's attention to Local Rule 7.1(a)(4) for the proper form and procedure for filing a motion to amend a pleading; in particular, the Court notes the requirement that a party moving to amend "must attach an unsigned copy of the proposed amended pleading to its motion papers." L.R. 7.1(a)(4).