**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAYTON SUPERIOR CORP.,**

                              **Plaintiff,**

                v.                                  1:08-CV-1312
                                                                     (FJS/RFT)

**SPA STEEL PRODUCTS, INC.,**

                              **Defendant.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**THOMPSON HINE, LLP**                **THOMAS J. COLLIN, ESQ.**
3900 Key Center                           **JENNIFER S. ROACH, ESQ.**
127 Public Square
Cleveland, Ohio 44114
Attorneys for Plaintiff

**HARRIS BEACH, PLLC**               **PAUL R. BRAUNSDORF, ESQ.**
99 Garnsey Road
Pittsford, New York 14534
Attorneys for Plaintiff

**KATZMAN LAW FIRM PLLC**      **ROBERT L. KATZMAN, ESQ.**
376 Broadway, Suite 21
Saratoga Springs, New York 12866
Attorneys for Defendant

**DEGRAFF, FOY & KUNZ, LLP**     **NICOLE R. RODGERS, ESQ.**
47 West Harrison Street
Saratoga Springs, New York 12866
Attorneys for Defendant


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Plaintiff's motion to dismiss Defendant's first and third amended counterclaims against it for antitrust violations under the Robinson-Patman Act and breaches of the implied warranties of merchantability and fitness for a particular purpose for defective products.

**II. BACKGROUND**

Plaintiff Dayton Superior Corporation filed this breach-of-contract action on July 16, 2008, to recover more than $1.2 million that Defendant Spa Steel Products, Inc. allegedly owed Plaintiff for goods that it had sold and delivered to Defendant.

On January 29, 2010, Plaintiff moved for summary judgment on its breach-of-contract claim and also moved to dismiss Defendant's affirmative defenses and counterclaims. In a September 24, 2010 Memorandum-Decision and Order, the Court (1) granted Plaintiff's motion for summary judgment but declined to enter final judgment until Defendant's counterclaims had been resolved, (2) granted Plaintiff's motion to strike Defendant's affirmative defenses, and (3) dismissed Defendant's second counterclaim for unfair competition. As to Defendant's first and third counterclaims, the Court granted Defendant's request for leave to amend;[1] and, on October 21, 2011, Defendant filed an amended answer, including its amended first and third counterclaims. In response, Plaintiff filed the instant motion to dismiss on November 4, 2011.

---

[1] Although Plaintiff initially opposed Defendant's motion to amend, it subsequently withdrew its objections to that motion. *See* Dkt. Nos. 60-61. In the Court's October 11, 2011 Order, it made clear that it was granting Defendant's motion to amend only insofar as it related to Defendant's first and third counterclaims. *See* Dkt. No. 62.

### III. DISCUSSION

A.   **Plaintiff's motion to dismiss Defendant's first and third counterclaims**

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This pleading standard does not require "detailed factual allegations," but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007) (citations omitted). The complaint must tender more than mere "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quotation omitted). A court must draw all reasonable inferences in favor of the nonmoving party. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation omitted). Moreover, in ruling on a motion to dismiss, the court may consider "any written instrument attached to the complaint as an exhibit, any materials incorporated into it by reference, and any other documents that are integral to it." *Youngblood v. Artus*, No. 9:10-CV-00752, 2011 WL 6337774, *4 (N.D.N.Y. Dec. 19, 2011) (citation omitted).

Finally, a plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence; and, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

### *1. Defendant's first counterclaim: Price-discrimination under the Robinson-Patman Act*

The Robinson-Patman Act ("RPA") prohibits discriminatory pricing among competing buyers of the same goods. *See* 15 U.S.C. § 13(a). To state a prima facie claim for secondary-line price discrimination[2] under section 2(a), a plaintiff must establish the following: (1) the seller's sales were made in interstate commerce; (2) the seller discriminated in price between the two purchasers; (3) the product contemporaneously sold to the competing purchasers was of the same grade and quality; and (4) the price discrimination had an unlawful effect on competition. *See Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176-77 (2006) (quoting 15 U.S.C. § 13(a)); *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 (2d Cir. 1998) (footnote and citation omitted). In this case, Defendant identifies four allegedly discriminatorily-priced categories of products (the "offending products"). *See* Dkt. No. 63, Defendant's Amended Answer/Counterclaim, at ¶¶ 14-21.

Plaintiff now moves to dismiss Defendant's first counterclaim because it contends that Defendant has failed to state a claim for price discrimination and that it lacks standing to do so.

### *a. Subject matter jurisdiction*

Plaintiff contends that the Court should dismiss Defendant's secondary-line price-discrimination counterclaim for lack of subject matter jurisdiction because Defendant has not alleged that it suffered a loss of sales to a competitor as a direct result of Plaintiff's discriminatory

---

[2] A secondary-line price discrimination claim, which Defendant asserts here, is a claim where the allegedly injured party is in competition with a favored customer of the seller. *See George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 n.2 (2d Cir. 1998) (citation omitted).

pricing; and, thus, Defendant has not met its burden to establish a causal connection between the alleged price discrimination and its injury.[3]

To establish standing, a plaintiff must show that (1) he has suffered an injury-in-fact, (2) the defendant's complained-of conduct caused the injury-in-fact, and (3) it is likely that the relief requested will redress his injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (quotations and other citations omitted). "Although a plaintiff's substantive price discrimination claims arise from Section 2(a) of the [RPA], the plaintiff's private right of action (or standing) to seek treble damages for such a violation is provided by Section 4 of the Clayton Act, 15 U.S.C. § 15." *Dayton Superior Corp. v. Marjam Supply Co., Inc.*, No. 07 CV 5215, 2011 WL 710450, *6 (E.D.N.Y. Feb. 22, 2011) (citation omitted). Such "a plaintiff must show (1) an injury-in-fact; (2) that has been caused by the violation; and (3) that is the type of injury contemplated by the statute." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 220 (2d Cir. 2004) (citations omitted).

In this case, Defendant alleges that Plaintiff "discriminated in price by offering [its offending products] . . . for sale at a substantially lower price than offered to [D]efendant to direct competitors of [D]efendant" and that Plaintiff's discriminatory-pricing directly resulted in, among other things, "substantial economic loss[.]" *See* Defendant's Amended Answer/Counterclaim at ¶¶ 24, 31-32. Defendant further alleges that "the effect of [P]laintiff's

---

[3] In its first motion to dismiss, Plaintiff asserted that Defendant lacked standing because it failed to allege that at least one of the sales of the discriminatorily-priced goods crossed a state line, either in connection with its purchase by Defendant or in connection with its purchase by a favored customer. The Court held that Defendant had pled facts sufficient to establish the Court's subject matter jurisdiction over this counterclaim because Plaintiff was involved in interstate commerce. *See* Dkt. No. 56 at 15.

policy of discriminatory pricing . . . resulted in injury, destruction and the prevention of competition between [D]efendant and its competitors." *See id.* at ¶ 30.

Moreover, taking the affidavit Defendant submitted into consideration for purposes of Plaintiff's jurisdictional challenge, one of Defendant's customers purchased a majority of Plaintiff's products from competitors of Defendant, rather than Defendant, because Defendant's prices were consistently 10% to 15% higher than those of its competitors. *See id.* at ¶ 29; *see also* Amended Answer/Counterclaim, Exh. A attached thereto. Although Plaintiff reasonably argues that these allegations tend to show, at most, that Defendant lost sales because its competitors offered lower prices to customers — which could be the result of any number of legitimate reasons, such as lower overhead costs or a business decision to charge less for these products, not that competitors were able to do so as a result of having received pricing from Plaintiff lower than that which Defendant received — this presents an issue of fact about which the Court would benefit from discovery.

Accordingly, the Court finds that Defendant has plausibly pled a sufficient nexus for causation purposes between Plaintiff's allegedly discriminatory pricing and Defendant's alleged injury to withstand a motion to dismiss on this ground. Whether Defendant's economic loss may ultimately be fairly attributed to Plaintiff's allegedly discriminatory-pricing practices is better reserved for a motion for summary judgment should such a motion prove to be appropriate following discovery. For these reasons, the Court denies Plaintiff's motion to dismiss Defendant's first counterclaim on the basis of a lack of subject matter jurisdiction.

### *b. Failure to state a claim upon which relief can be granted*

In its September 24, 2010 Memorandum-Decision and Order, the Court held that Defendant insufficiently pled that there were contemporaneous discriminatory sales and a resulting injury to competition, but it granted Defendant leave to amend because it appeared to the Court that Defendant possessed facts sufficient to survive a motion to dismiss. *See* Dkt. No. 56 at 18-20.

### *(1). Price discrimination by the seller*

In an attempt to cure the deficiencies of its initial counterclaim, Defendant added an example of Plaintiff's allegedly discriminatory pricing to its amended counterclaim and attached an affidavit in support thereof.[4] One of Defendant's customers, BBL Construction Services, submitted the affidavit, which stated, among other things, the following:

> During the period commencing in 2005 through 2007 we purchased a majority of [Plaintiff's] products from A.H. Harris and Barker Steel [competitors of Defendant]. The reason that we refrained from purchasing [Plaintiff's] products from [Defendant] was that those products were always 10% to 15% higher than the prices quoted by [Defendant's] competitors . . . . During the period commencing in 2005 through 2007 [Defendant] was actively engaged in competition with both Barker Steel and A.H. Harris and was bidding for many of the same customers [of Defendant] including BBL.

*See* Amended Answer/Counterclaim at ¶ 29 & Exh. A attached thereto. Defendant further alleges that it has suffered an economic loss as a direct result of Plaintiff's discriminatory pricing practices and that Plaintiff offered the offending products to Defendant's competitors at

---

[4] The Court may consider the affidavit for purposes of the instant motion to dismiss because it was referenced in Defendant's counterclaim and attached thereto. *See Youngblood*, 2011 WL 6337774, at *4 (citation omitted).

substantially lower prices than those it offered to Defendant. *See* Amended Answer/Counterclaim at ¶¶ 24-25, 31-32.

Accordingly, the Court finds that Defendant's amended counterclaim adequately alleges that Plaintiff discriminated in price between competing buyers. *Cf. Monsieur Touton Selection, Ltd. v. Future Brands, LLC*, No. 06 Civ. 1124, 2006 WL 2192790, *6 (S.D.N.Y. Aug. 1, 2006) (granting motion to dismiss where complaint failed to "allege the existence of a single favored purchaser, and g[ave] virtually no indication of the time period in which the alleged discrimination took place" (footnote omitted)).

### *(2). Same grade and quality*

Defendant must further show that the product sold to the favored and disfavored purchasers was of like grade and quality. Here, the Court finds that Defendant has sufficiently alleged reasonably contemporaneous discriminatory sales of the offending products between 2005 and 2007 and that these sales involved goods of like grade and quality. *See* Amended Answer/Counterclaim at ¶¶ 24-25, 29.

Therefore, the Court finds that Plaintiff has sufficiently demonstrated that the offending products were of like grade and quality.

### *(3). Unlawful effect on competition*

Finally, Defendant must allege harm to competition resulting from the alleged price discrimination. *See George Haug Co.*, 148 F.3d at 142 (citations omitted). To do so, Defendant must show "the diversion of sales or profits from a disfavored purchaser to a favored purchaser." *Volvo Trucks N. Am., Inc.*, 546 U.S. at 177 (citations omitted).

In its amended counterclaim, Defendant alleges that Plaintiff "discriminated in price by offering [its offending products] . . . for sale at a substantially lower price than offered to [D]efendant to direct competitors of [D]efendant" and that Plaintiff's discriminatory-pricing directly resulted in, among other things, "substantial economic loss[.]" *See* Defendant's Amended Answer/Counterclaim at ¶¶ 24, 31-32. Defendant further alleges that "the effect of [P]laintiff's policy of discriminatory pricing . . . resulted in injury, destruction and the prevention of competition between [D]efendant and its competitors." *See id.* at ¶ 30. As an example of this discriminatory pricing, Defendant alleges that BBL (a customer) bought goods from Barker Steel and A.H. Harris (competitors) because Plaintiff charged Barker Steel and A.H. Harris less than it charged Defendant. *See id.* at ¶¶ 24-25, 29; *see also* Amended Answer/Counterclaim, Exh. A attached thereto. The Court finds that whether or not Plaintiff actually engaged in discriminatory pricing that resulted in a diversion of sales or profits from Defendant constitutes an issue of fact sufficient to withstand a motion to dismiss.

Therefore, the Court denies Plaintiff's motion to dismiss Defendant's first counterclaim pursuant to the RPA.

### *2. Defendant's third counterclaim: Implied warranties for defective products*

As with the first counterclaim, the Court granted Defendant leave to amend its third counterclaim for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose.[5] *See* Dkt. No. 56. Uniform Commercial Code ("UCC") sections 2-314 and 2-315, respectively, govern implied warranties of merchantability

---

[5] Although not specifically referred to by name, the Court inferred these two distinct implied warranty claims from Defendant's allegations. *See* Dkt. No. 56.

and fitness for a particular purpose. In this case, following the Court's grant of leave to amend so as to provide Defendant an opportunity to plead facts sufficient to maintain a cause of action for either of these alleged breaches, Defendant's amended counterclaim and a letter attached thereto aver new allegations and factual information about one of Plaintiff's allegedly defective products.[6]

Specifically, Defendant alleges that one of its customers, Cold Springs Construction Company ("Cold Springs"), purchased a large quantity of a particular product that Plaintiff had manufactured, that the product did not work properly when Cold Springs applied it, and that Plaintiff now refuses to accept responsibility for this defective product. *See* Amended Answer/Counterclaim at ¶ 36. Furthermore, Cold Springs' letter states that Plaintiff's "Type II Class B white pigmented curing compound" (the "curing compound") was defective, that Plaintiff's representative admitted that the curing compound was not performing as it was supposed to, and that Defendant removed the product at its own expense. *See* Amended Answer/Counterclaim, Exh. B attached thereto.

### *a. Breach of the implied warranty of merchantability*

To succeed on a breach of the implied warranty of merchantability claim, the complainant must establish "'"(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the [injury]."'" *Plemmons v. Steelcase Inc.*, No. 04 Civ. 4023, 2007

---

[6] Again, the Court may consider the letter for purposes of the instant motion to dismiss because it was referenced in Defendant's counterclaim and attached thereto. *See Youngblood*, 2011 WL 6337774, at *4 (citation omitted).

-10-

WL 950137, *3 (S.D.N.Y. Mar. 29, 2007) (quotation and other citation omitted). "In short, the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used." *Id.* (citation omitted).

Defendant's amended counterclaim alleges that the curing compound was defective when its customer, Cold Springs, applied it and that Defendant suffered a financial loss as a direct result of that defect. *See* Amended Answer/Counterclaim at ¶¶ 36-37 & Exh. B attached thereto. Defendant further alleges that Plaintiff sold and delivered the curing compound to Defendant, in its capacity as a distributor and re-seller of such products, on numerous occasions. *See* Amended Answer/Counterclaim at ¶¶ 34-35. Thus, the Court finds that Defendant has sufficiently alleged that the defect existed when the manufacturer delivered the product to the purchaser or user. Finally, Defendant's amended counterclaim and the letter attached thereto tend to show that the allegedly defective curing compound — a product applied to freshly finished concrete pavement — was not fit for the ordinary purpose for which it was to be used because the product allegedly took six hours to dry instead of the standard drying time of two hours or less. *See* Amended Answer/Counterclaim at ¶ 36 & Exh. B attached thereto.

Therefore, the Court denies Plaintiff's motion to dismiss Defendant's third counterclaim with respect to Defendant's breach of the implied warranty of merchantability claim because Defendant has set forth sufficient facts to survive a motion to dismiss.[7]

### b. Breach of the implied warranty of fitness for a particular purpose

To sustain a claim for a breach of the implied warranty of fitness for a particular purpose,

---

[7] Unless Defendant otherwise shows good cause, the Court will limit discovery on this counterclaim to the specific alleged defective product set forth herein, i.e., the curing compound.

the movant must establish three elements: (1) the seller, at the time of contracting, must have reason to know the particular purpose for which the goods are required; (2) the seller must have reason to know that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods for the specified purpose; and (3) the buyer must actually rely on the seller's skill or judgment. *See Emerald Painting, Inc. v. PPG Indus., Inc.*, 99 A.D.2d 891, 891-92 (3d Dep't 1984) (quotation omitted); *see also Symphony Fabrics Corp. v. Creations by Aria, Inc.*, 111 A.D.2d 650, 651 (1st Dep't 1985).

In this case, Defendant alleges that Plaintiff intentionally and recklessly sold and delivered the offending products on numerous occasions to Defendant and that, as a distributor and re-seller, Defendant sold and delivered the offending products to its customers throughout the Northeastern United States. *See* Amended Answer/Counterclaim at ¶¶ 34-35. Construed in the light most favorable to Defendant and taken as true for purposes of the instant motion to dismiss, these allegations support a reasonable inference that Plaintiff knew or had reason to know of the purpose for which the product was to be used and that Defendant reasonably relied on Plaintiff's skill or judgment in supplying conforming products. Although it remains unclear whether Defendant — as a middleman — can ultimately establish each of these elements, the Court finds that an issue of fact exists, about which the Court and the parties would benefit from discovery.

Accordingly, the Court denies Plaintiff's motion to dismiss Defendant's third counterclaim with respect to Defendant's breach of the implied warranty of fitness claim because

Defendant has set forth just enough factual matter to go forward at this stage of the litigation.[8]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to dismiss Defendant's first and third counterclaims is **DENIED**; and the Court further

**ORDERS** that discovery regarding Defendant's third counterclaim for breach of the implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose shall be limited in scope to the Type II Class B white pigmented curing compound that Plaintiff manufactured and Defendant identified, unless Defendant shows good cause why the Court should not so limit discovery; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Treece for all further pretrial matters, including a determination on the scope of discovery related to Defendant's third counterclaim.

**IT IS SO ORDERED.**

Dated: January 13, 2012
   Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[8] However, as stated, unless Defendant otherwise shows good cause, the Court will limit discovery on this counterclaim to the specific alleged defective product set forth herein, i.e., the curing compound.